First case on calendar is Malave v. Weir. We will hear you now. Mr. Cunningham, how are you this morning? Good morning, Your Honors. Very good, thank you. My name is Damian Gunningsmith, and I represent the plaintiffs' appellants Eduardo Malave and Jacqueline Grunert. Your Honors, fundamentally this case— I'm sorry, I had your name wrong because it's wrong on the little sheet. Mr. Gunningsmith, go ahead. No, thank you. Your Honors, fundamentally this case is about whether the State of Connecticut Department of Corrections can permanently deprive a Connecticut inmate of visitation with his spouse, and relatedly, whether they can do so without any due process. Well, when you say permanently deprived, I mean visitation with his spouse resumed after eight months. Yes, however— Eight months is not forever. The order depriving him of visitation was a permanent order. It was indefinite. Indefinite, permanent, and indefinite for all intents— You keep saying permanent, but it's indefinite. Yes, and indefinite is permanent from the plaintiff's position. Indefinite meaning there's no opportunity for a review. There was no endpoint. I mean, it could be permanent. It could be permanent, and it could be permanent.  There's no opportunity for a review of the order. It's purely at the whim of the warden at that point. So for all intents and purposes, as its effect on the inmate, it's a permanent deprivation. Certainly, any order of— I assume that if you were to substitute the word judgment for whim, your viewpoint would be the same. If you were to call it judgment rather than whim, I assume your position would not change. It would still be considered permanent. Yes, my position would not change. If the court had intervened and cut off the deprivation, it still would have been a permanent deprivation up until the court intervened at that time. Isn't that aspect of the case moot since it was terminated? Since it was terminated? Yes, since your argument that it was permanent seems to be mooted by the subsequent event. The official capacity injunctive relief was mooted by the intervening actions of the warden, but in terms of the underlying conduct, when she issued an order that indefinitely or permanently deprived the plaintiff of visitation with his spouse, there was a constitutional violation at that point. At that point, he had violated a clearly established— the warden had violated a clearly established constitutional right to visitation. There was no temporal limitation. Every case that says that there's some reasonable limitation on depriving inmates of visitation has a temporal limitation in it. So, for example, Overton, there's a temporal two-year ban that's imposed up front. It's not indefinite. It's not a two-year. It's not, well, it's an indefinite ban, and maybe we'll review it at some point. And it was temporarily limited at the start or the imposition of the deprivation. And that's the same with Williams v. Osmond, which is cited by the defendants as well. The injunctive aspect is mooted? Yes, yes. We did not appeal it. What's the relief that you're asking for with respect to the argument that a permanent ban— We'd be asking for money damages for the constitutional harm. For permanence, which did not occur. It didn't occur because there was an intervening event, yes. Setting aside whether it was a permanent or not First Amendment violation, there's still an issue of whether— What if a warden doesn't know how long it can or should be? Should the warden put us, just say, five years and then cut it short at some point? The warden should impose a temporal scope and allow the inmate— Yes, but it's a matter of concern about bringing in drugs into the prison. You don't know how long it'll take to investigate it. You don't even know whether it happened. So how do you know how long the ban ought to be? So why not make it indefinite? There's two related aspects, because I would respond in two ways. One, if you don't even know if it happened and you're depriving someone of visitation with their spouse for an indefinite period of time— You have to investigate it. That's the epitome of arbitrary action, though. Well, we're not sure, so you can't visit with your spouse. I hate to put it this way, but prisoners have reduced constitutional rights. I absolutely do not dispute that, Your Honor. However, they do have some right, and the prison has to act rationally. Supposing it was six months subject to review at the end of six months. It could be renewed. It could always be renewed. And that may pass constitutional muster, and the question is at that point, is the decision to continue going to be rationally related to a legitimate penological interest at that point? If they've investigated and there's no justification for continued deprivation, then it would— But surely, in Judge Sachs' hypothetical, it's indefinite. It's six months. It could be another six months and another six months. If you wait on enough six months, it gets to be permanent, right? Yes, and in Overton, the court acknowledged that that's a potential scenario that could occur, and that that may be a constitutional deprivation, and that's almost precisely what the court said in Overton. It said there's a two-year ban subject to review at the end of two years, and they said, well, if it gets applied arbitrarily and ends up de facto permanent, then there's maybe a constitutional violation there, and that's effectively what we're arguing. But I'd also like to point to the regulation as well. Regardless of whether there's a First Amendment right, the Connecticut Inmate Visit Regulation also establishes a protected liberty interest under which the state of Connecticut cannot deprive inmates of noncontact visits without giving them minimum procedural protections. And here, if you look at this regulation and you compare it to Kentucky, Department of Corrections v. Thompson, and you compare it to Tellier v. Fields, you can see this regulation— Now you're talking about a deprivation that did take place. That did take place. Yes, I mean eight months in which I'm not sure I understand why there can't be noncontact communication with the spouse. Correct. Yes, and under that regulation, at a minimum, the state of Connecticut should have provided notice to the inmate and it should have given them some form of ability to object and have review of the decision of no contact violation for a deprivation for conspiracy to convey contraband. I mean clearly there's no ability to convey contraband through a plate glass window at the prison. And you can communicate information. And you could communicate information through letters and phone calls, which he was permitted to do as well. So clearly the interest was not in ceasing all forms of communication. It was to prevent the conveyance of contraband, and noncontact visitation effectively does that. There's no need to impose that heightened level of deprivation under the circumstances. And again, I'm just pointing to that regulation. There's all sorts of limitations within that regulation that impose— it's clear that the state of Connecticut considers noncontact visitation to be a right that inmates have under the regulation. I see that I'm out of time. You've reserved some rebuttal. I've reserved some rebuttal. We will hear you then, sir. Thank you. Good morning, Judge Jacobs, Judge Sack, Judge Kearse. You're doing well so far. That's only so far. The question is why wasn't noncontact visitation allowed? These are spouses? Yes, Your Honor. Contraband which cannot pass through an impermeable barrier. I think Your Honor pointed to it. A couple reasons. One is that they can communicate through— Your adversary says they can communicate on the phone. Sure, and those phones are monitored. And mail is opened and read. So that's not as good an installation. Was he permitted to communicate with his wife by phone? After four months. Your Honor, what happened was after four months the warden reviewed his case and decided to allow telephone contact. And then when she found out through the injunction proceeding that he was actually married, then she authorized noncontact visitation. And she testified at her deposition meeting. The warden testified. She didn't know he was married. He was married at Cheshire Correctional Institute before he was transferred to her facility, and his paperwork wasn't updated. And quite frankly, Your Honor, in that setting, in that forum, they don't take your word for it. If it's not in your file, it doesn't exist, unlike here. But in that forum, just because you say it doesn't make it so. These are the same people that every year around Ramadan, everybody's of the Islamic faith. They want the special Ramadan meals. So, no, she's not going to take his word for it. And he wasn't offering any proof. Was he given the opportunity to make the argument? Yes, because... It would take four months to make the argument. He didn't make it. Whether he was married. I mean, there may not have been an elaborate wedding ceremony, but there was certainly an entry in his record. There's nothing in his record, Your Honor. In fact, he had listed his next of kin in the event of an emergency as his mother. There was absolutely no indication in his record that he was married. There was a review mechanism. Both the aggrieved visitor has a right under Administrative Directive 10.6, Section 5, to file a grievance over the deprivation. He has the ability through the inmate grievance procedures to grieve that. He could have attached a copy of his wedding certificate and said, hey, look, I'm married. He didn't do any of those things. And she never filed a grievance. They just filed an application for a preliminary injunction in district court. So may I continue? By all means. Your Honor, it would seem that a lot of this we don't even have to look at because this argument was waived. This permanent visitation ban argument was waived because it wasn't presented below. The Court of Appeals does not typically entertain shifting arguments on appeal. Because the rule is prudential and not jurisdictional, the court can do it at times if they determine it's appropriate. Circumstances where it is appropriate would be to avoid manifest injustice or where there's no additional fact-finding required. And Mr. Gunning-Smith in his brief maintains that no additional fact-finding would be required, so the court should entertain it. There is another layer, though, and this comes from Judge Kearse's decision in which Judge Sack was on the panel. Bogle-Asagi v. Connecticut, 470 F. 3rd, 498. Judge Kearse wrote that even when you have manifest injustice or you have no additional fact-finding required, the circumstances still normally do not militate in favor of an exercise of discretion to address new arguments on appeal. Where those arguments were available to the parties below and they proffered no reason for their failure to raise them. And what we have here is we don't have Mr. Gunning-Smith telling you why he didn't raise that argument below. He instead says, well, I did raise it. And he points to the pro se complaint that was filed right in the beginning of the litigation, which is not his objection to the summary judgment motion. And then he points to my summary judgment memorandum and says, well, look there, look in there. He didn't tee up the issue in his summary judgment motion. I absolutely did tee up the issue at the record of page A61. So in any event, I would respectfully submit that this argument, this permanent deprivation argument is waived. To the extent it's not waived, frankly, it's ridiculous. Okay. There we have it. That sounds like the end of your argument. Okay. Okay. No, I think we're done with that piece of it. The only thing I would like to say is the second part of his appeal goes to Administrative Director 10.6, and he claims that the directive creates a liberty interest in visitation that's protected by the Due Process Clause. By a spouse. Or in general. In general. And in order for the state, by regulation, to create a liberty interest that's protected by the Due Process Clause, he needs to show two things. One is that it must create, he must show an atypical significant hardship, and he must show that the state regulation removes discretion from prison officials. In other words, that once certain substantive predicates have been met, a state official has no authority to deny visitation. And that's certainly not the case here. In the first instance, there was no atypical significant hardship. The court in Overton recognized that the two-year deprivation in that case was not a dramatic departure from the accepted standards of conditions of confinement. And while the court did mention this, say this in its Eighth Amendment analysis, the court specifically cited Sandin v. Conner, which is the seminal case on atypical and significant hardship and creation of liberty interests. So it fails for that reason, and it also fails because this regulation at issue, Administrative Directive 10.6, does not remove discretion from prison officials in making these visitation decisions. In fact, it authorizes the Department of Correction to any official to cancel visitation or to remove a visitor in the event that there's a reasonable belief of a safety and security issue. And then they articulate some of them. What is a reasonable belief is entirely discretionary, and so too, what is a safety and security issue. So I think Judge Meyer simply got it right. There's no creation of a liberty interest by way of this state regulation. Thank you. Okay, we're all set? Thank you, Your Honor. I hear rebuttal. I'll just make a couple quick points, Your Honor. One, I certainly apologize if I'm making ridiculous arguments, if that's the case. Unrelatedly, with respect to the issue of whether the warden knew that Mr. Malavey was married, it's clear from the file that he repeatedly indicated that it was his wife that was removed from his visiting list as part of his grievance process. And this just proves the point about why the state should afford him some minimum due process. They never followed up. Was it in his record? It's in the desk. Was it in his prison record when he was transferred from his prior institution? I don't believe it was, Your Honor. However, it was. He did repeatedly call the visitor that was removed, his wife, when complaining to the prison officials about the issue, and he was never given an opportunity to prove it was his wife. He was married to her when he was incarcerated previously? Yes. And then related to the regulation issues, the atypical and significant deprivation prong, and we've briefed this extensively, but the Code of Penal Discipline in the State of Connecticut allows for no more than a 60-day deprivation or modification of social visiting privileges for a violation, including conveying contraband into the prison. It's certainly atypical and significant that you would deprive someone for eight months or longer for just believing they may have done it when you couldn't do that if you could prove that they did it under the Code of Penal Discipline. And then with respect to the issue of whether the regulation creates substantive predicates to guide official discretion, the Court needs to look no further than Kentucky v. Thompson. That case has a similar regulation that talks about a visitation regulation that allows for denying visitation for issues related to safety and security, and the Supreme Court says those are substantive predicates that guide official discretion. The issue there was the overall policy itself did not mandate, it allowed, the State had reserved the right to allow visitation. I see I'm out of time, but for those reasons, Your Honor, the Court should reverse the judgment of the District Court. Thank you. Thank you both. Well, reserved decision.